# Richmond.

ATLANTIC COAST LINE RAILWAY CO. & OTHERS *v.* COMMON-
WEALTH.

MARCH 24, 1904.

1. CONSTITUTIONAL LAW—*Interstate Commerce—Right of State to Leg-
   islate.*—Notwithstanding the constitutional authority of Congress
   to regulate interstate and foreign commerce, the States have power
   to enact laws designed to secure the safety and comfort of pas-
   sengers, employees, persons crossing railway tracks and adjacent
   property owners, and to make other regulations intended to pro-
   mote the welfare and convenience of its citizens, although in their
   operation such laws may incidentally affect interstate traffic.

2. STATE CORPORATION COMMISSION.—*Regulation of Transportation Com-
   panies—Constitutional Law.*—The rules and regulations established
   by the State Corporation Commission for the government of trans-
   portation companies and shippers doing business in this State are
   reasonable, just and valid, except in so far as they may in their
   operation directly trench upon the commerce clause of the Consti-
   tution of the United States, or violate some right of such companies
   or shippers protected by that instrument; and objections on the
   latter account may be raised and determined in any case in which
   that question could be raised and determined if the rules and
   regulations had been enacted as statutes by the General Assembly,
   except as prohibited by subsection "d" of section 156 of the Con-
   stitution of this State. Whether said rules and regulations do
   directly infringe upon the commerce clause of the Constitution
   of the United States, or violate any right of said companies can
   only be properly determined as the questions arise in concrete
   cases, and upon the particular facts of each case, and cannot be
   properly decided on this appeal where only abstract questions are
   raised.

3. APPEAL AND ERROR—*State Corporation Commission—Unconstitutional
   Rules.*—The State Corporation Commission has no authority to

make any rule or regulation in conflict with the Constitution of
the United States, and if any such rule or regulation is made,
which in its application to the facts of a particular case, violates
any right of a defendant protected by the Constitution of the
United States, he may have its validity tested by an appeal to this
court, notwithstanding its refusal to pass on the abstract proposi-
tion presented on the present appeal.

Appeal from the State Corporation Commission.

*Affirmed.*

By section 155 of the Constitution, which went into effect
July 10, 1902, a permanent commission is created, to be
known as the "State Corporation Commission." By subsection
"*a*" of section 156 it is declared that, "subject to the provisions
of this Constitution and to such requirements, rules and regu-
lations as may be prescribed by law, the State Corporation Com-
mission shall be the department of government . . . . .
through which shall be carried out all the provisions of this
Constitution, and of the laws made in pursuance thereof, for
the creation, visitation, supervision, regulation and control of
corporations chartered by, or doing business in, this State."
Subsection "*b*" of that section provides that "the Commission
shall have the power, and be charged with the duty, of super-
vising, regulating and controlling all transportation and trans-
mission companies doing business in this State, in all matters
relating to the performance of their public duties and their
charges therefor, and of correcting abuses therein by such com-
panies; and to that end the commission shall, from time to
time, prescribe, and enforce against such companies, in the man-
ner hereinafter authorized, such rates, charges, classifications
of traffic and rules and regulations, and shall require them
to establish and maintain all such public service, facilities and
conveniences, as may be reasonable and just, which said rates,

charges, classifications, rules, regulations and requirements the commission may, from time to time, alter or amend. . . . . "Before the commission shall make or prescribe any general order, rule, regulation or requirement, not directed against any specific company, or companies, by name, the contemplated general order, rule, regulation or requirement shall first be published in substance, not less than once a week for four consecutive weeks in one or more of the newspapers of general circulation, published in the city of Richmond, Virginia, together with notice of the time and place, when and where the commission will hear any objections which may be urged by any person interested, against the proposed order, rule, regulation or requirement; and every such general order, rule, regulation or requirement, made by the commission, shall be published at length, for the time and in the manner above specified, before it shall go into effect, and shall also, as long as it remains in force, be published in each subsequent annual report of the commission. The authority of the commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges and classifications of traffic for transportation and transmission companies, shall be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the General Assembly to legislate thereon by general laws. . . . . ."

By subsection *"d"* of that section it is provided that, "From any action of the commission prescribing rates, charges or classifications of traffic, or affecting the train schedule of any transportation company, or requiring additional facilities, conveniences or public service of any transportation or transmission company, or refusing to approve a suspending bond, or requiring additional security thereon, or an increase thereof, as provided for in subsection *"c"* of this section, an appeal (subject

to such reasonable limitations as to time, regulations as to procedure and provisions as to costs, as may be prescribed by law) may be taken by the corporation whose rates, charges or classifications of traffic, schedule, facilities, conveniences or service; are affected, or by any person deeming himself aggrieved by such action, or (if allowed by law) by the Commonwealth." That subsection further provides that such 'appeal shall be as of right, and to the Supreme Court of Appeals only.

Subsection "*f*" of that section, after providing how the record for an appeal shall be made up, and that the commission shall file with it, and as a part thereof, a written statement of the reasons upon which the action appealed from was based, which statement shall be read and considered by this court upon disposing of the appeal, provides that this court "shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal; provided, however, that the action of the commission appealed from shall be regarded as *prima facie just, reasonable and correct.* . . . . ."

By an act approved May 16, 1903 (Acts 1902-'3-'4, p. 392), the Corporation Commission was required to fix and prescribe storage, demurrage and car-service charges, which may be collected by railroad and other transportation companies on freight transported, or to be transported, by them, and to be paid by them on freight delayed and cars not promptly furnished or placed by them, with rules and regulations governing the same.

By virtue of the authority conferred by the Constitution and the Act of Assembly, the Corporation Commission, after notice and hearing, as provided by the Constitution, prescribed and fixed certain rules and regulations for the government of transportation companies and shippers doing business in this State, and which are as follows:

"All storage, demurrage and car-service charges, and all car detention charges, shall be as prescribed in these rules. Nothing in these rules shall apply to shipments of live-stock and perishable freight, which shipments shall be governed by the statutes now in force, with such additional requirements as may be ordered by the commission from time to time. In all computation of time under these rules, Sundays and legal holidays are to be excluded.

### "Rule I.

"When a shipper makes a verbal or written application to a railroad company for a car, or cars, to be loaded with any kind of freight embraced in the tariff of said company, stating in said application the character of the freight, and its final destination, the railroad company shall furnish same within four days from seven o'clock A. M. the day following such application.

"Or, when the shipper making such application specifies a future day on which he desires to make a shipment, giving not less than four days' notice thereof, computing from seven o'clock A. M. the day following such application, the railroad company shall furnish such car, or cars, on the day specified in the application.

"For failure to comply with this rule the company so offending shall forfeit and pay to the shipper applying the sum of $1.00 per car per day, or fraction of a day's delay after expiration of free time, upon demand in writing, made within thirty days thereafter by the shipper.

"Provided, however, that this rule shall not apply to shipments of coal and coke from mines and ovens.

### "Rule II.

"When freight in carloads or less is tendered to a railroad company, and correct shipping instructions given, the railroad

agent must immediately receive the same for shipment, and issue bills of lading therefor, and whenever such shipments have been so received by any railroad company, they must be carried forward at the rate of not less than fifty (50) miles per day of twenty-four hours, computing from seven o'clock A. M. the day following receipt of shipment, and for failure to receive and transport such shipments within the time prescribed, the railroad company so offending shall forfeit and pay to the shipper the sum of $10.00 per car per day, or fraction thereof, on all carload freight, and one cent per hundred pounds per day, or fraction thereof, on freight in less than carloads, with minimum charge of five (5) cents for any one package, upon demand in writing by the shipper, or other party, whose interest is affected by such delay; provided, that in computing the time of freight in transit there shall be allowed twenty-four hours at each point where transferring from one railroad to another, or rehandling of freight, is involved.

"The period during which the movement of freight is suspended on account of accident, or any cause not within the power of the railroad company to prevent, shall be added to the free time allowed in this rule, and counted as additional free time.

### "Rule III.

"Railroad companies shall, within twenty-four hours after arrival of shipments, give notice, by mail or otherwise, to consignee of the arrival of shipments, together with the weight and amount of freight charges due thereon, and where goods or freight in carload quantities arrive, such notice shall contain also identifying numbers, letters and initials of the car, or cars, and, if transferred in transit, the number and initials of the car in which originally shipped. Any railroad company failing to

give such notice shall forfeit and pay to the shipper, or other party, whose interest is affected, the sum of $1.00 per car per day, or fraction of a day's delay, on all carload shipments, and one cent per hundred pounds per day, or fraction thereof, on freight in less than carloads, with minimum charge of five (5) cents for any one package, after the expiration of the said twenty-four hours; provided, that not more than one dollar per day be charged for any one consignment not in excess of a carload.

"(a) This rule is applicable also to steamboat and steamship lines.

## "Rule IV.

"Railroad companies shall deliver freight at their depots or warehouses, or, in case of shipments for track delivery, shall place loaded cars at an accessible place for unloading within twenty-four hours after arrival, computing from 7 o'clock A. M. the day following arrival of same, except that carload shipments for track delivery at local stations, having not more than one team track, shall be placed at an accessible point for unloading by the conductor of the train on which the car arrives. The shipper or consignee shall be paid $1.00 per car per day for each day, or fraction of a day, such delivery is so delayed.

## "Rule V.

"All carload freight, or freight carried at carload rates, and all freight in cars, whether full carload or not, taking track delivery, shall be subject to the demurrage or car-service charges prescribed in these rules.

## "Rule VI.

"A shipper, on whose order a car, or cars, have been placed for loading, shall be allowed forty-eight hours for the loading

of such car, or cars, computing time from seven o'clock A. M. the day after such car, or cars, have been placed, subject to the order of shipper, and thereafter a demurrage charge of not more than $1.00 per car per day, or fraction of a day, may be assessed and collected on all such cars as have not been tendered to the railroad company, with shipping instructions, within said forty-eight hours; provided, however, that, should the shipper fail to begin loading within forty-eight hours after the expiration of free time, the railroad company shall consider the car or cars released, and may assess and collect $2.00 on each car, covering the demurrage then due.

"Railroad companies shall not be compelled to furnish cars for future shipments to parties in default as to the payment of the demurrage charges, herein last provided for, until such demurrage charges have been paid.

"If, after placing the car, or cars, as required by this rule, the railroad company shall, during or after free time, temporarily remove all or any of them, or in any way prevent, obstruct or delay the loading of same, the shipper shall not be chargeable with the delay caused thereby.

"When, by reason of delay or irregularity on the part of the railroad company in filling orders, cars are bunched in excess of the ability of the shipper to load, as indicated in his applications, the shipper shall be allowed separate and distinct periods of free time within which to load the car, or cars, specified in each separate application.

## "Rule VII.

"A car, or cars, detained or held at point of shipment for want of proper shipping instructions, or by reason of imperfect or excessive loading, where loading is done by shipper, shall be subject to a demurrage charge of $1.00 per car per day, or

fraction of a day, said car, or cars, are so detained or held. In cases of imperfect or excessive loading the shipper shall be notified thereof as early as practicable after said car, or cars, have been received from him, in which case car-service charges shall begin at the time of notification.

## "Rule VIII.

"Legal notice, as referred to in these rules, may be either actual or constructive. Where the consignee or his agent is personally served with notice of the arrival of freight at or before 6 P. M. of any day, free time begins at seven o'clock A. M. on the day after such notice has been given. Constructive notice referred to consists of posting notice by mail to consignee. Where this mode of giving notice is adopted there shall be twenty-four hours' additional free time; provided, however, that when, in any case where notice of arrival is given by mail, the consignee shall make oath that neither he, his agents, nor employees have received such notice, then he will be held not to have received legal notice by reason of posting of said notice by mail.

## "Rule IX.

"All package 'freight unloaded by railroad companies in their depots or warehouses, and all freight which, in order to release cars, is unloaded in the yard space of a railroad company, which is not removed by the owners thereof from the custody of the railroad company within forty-eight hours, computing from seven o'clock A. M. of the day following legal notice of arrival, may be subject to the charge of storage for each day, or fraction of a day, it may remain in the custody of the railroad company, as follows:

"In less than carloads, not more than one cent per hundred pounds per day, or fraction thereof; in carload quantities, not more than ten cents per ton of 2,000 pounds per day, or frac-

tion thereof, but not exceeding $1.00 per car per day, or fraction of a day; provided, that in no case shall the amount so collected for storage of a less than carload shipment exceed the amount authorized to be charged as storage or demurrage on a carload of similar freight for the same length of time when not unloaded from car, as provided by the demurrage rules.

"(b) This rule shall apply also to steamboat and steamship companies unloading package freight in their warehouses, except that one hundred and twenty (120) hours of free time shall be allowed, instead of forty-eight.

## "Rule X.

"Loaded cars containing fertilizers, hay, coal, coke, brick, and lumber in covered cars, and the following articles in bulk: Meat, potatoes, grain and grain products, cotton seed and cotton seed hulls, taking track delivery, which are to be unloaded by consignee, but are not unloaded within seventy-two hours, computed from seven o'clock A. M. the day following the day legal notice of arrival is given (having been placed at an accessible point for unloading) may be subject thereafter to a charge for demurrage of $1.00 per car for each day, or fraction of a day, that they may remain loaded in possession of the railroad company. All other loaded cars, taking track delivery, to be unloaded by consignee, shall be limited to forty-eight hours of free time; provided, however, that if, after placing a car, or cars, as required in this rule, the railroad company shall, during or after free time, temporarily remove all of them, or in any way obstruct the unloading of same, the consignee shall not be chargeable with the delay caused thereby.

"Provided, that when, on account of delay or irregularity in transportation, cars are bunched in transit and delivered to consignee in numbers beyond his reasonable ascertained ability

to unload within the free time prescribed in these rules, he shall be allowed by the carrier such additional time as may be necessary to unload cars so in excess by the exercise of due and usual diligence on the part of consignee.

## "Rule XI.

"Whenever the weather during the period of free time is so severe, inclement or rainy that it is impossible or impracticable to secure means of loading or unloading freight, or when, from the nature of the goods, loading or unloading would cause injury or damage, such time shall be added to the free period, and no demurrage charges shall be allowed for such additional free time. This rule applies to the state of the weather during business hours.

## "Rule XII.

"A consignee or consignor, five miles or more from the depot, and whose freight is destined to or from his place of business or residence, so located, shall not be subject to storage or demurrage charges allowed in the foregoing rules until a sufficient time has elapsed after notice for said consignee or consignor to remove or load said goods by the exercise of ordinary diligence. But the time limit for loading or unloading shall not exceed five days.

## "Rule XIII.

"On carload freight originating in Virginia and shipped on local bills of lading to a terminal point at a port within this State, there shall be allowed ten days' free time, computing from seven o'clock A. M. the day after arrival of car, or cars, before·

application of storage or demurrage charges; provided the consignee, within forty-eight hours after the arrival of such car, or cars, notifies the delivering line at such terminal point that it is intended for further movement.

### "Rule XIV.

"Incoming carload freight, coming under the provisions of Rules XI and XII, may be stored by railroad companies in depots or warehouses at the expense of owner, if same is not removed before demurrage charges attach; provided, that daily storage charge on such freight shall not exceed the demurrage allowed under these rules.

### "Rule XV.

"If the consignee shall refuse to accept freight tendered in pursuance of the bill of lading, the carrier charged with the duty of delivery shall give legal notice to the consignor of such refusal; and if he shall not, within three days thereafter, give direction for the reshipment or unloading, or other disposition of such goods, he shall thenceforth become liable to such carrier for storage on such goods, or demurrage upon the car, or cars, in which they are stored, to the same extent, and at the same rates as such charges are now, under like circumstances, by the rules of this commission, imposed upon consignee, who neglect or refuse, after notice of arrival, to remove freight of like character from the depots or cars of the carrier. A consignee who has once refused to accept a consignment of goods, shall not thereafter be entitled to receive the same, except upon payment of all charges for storage or demurrage which have accrued; and, if the consignee of freight in carloads, or less than carloads, shall fail or neglect to remove such freight within three

days after the expiration of free time, then the carrier shall, through the agent at point of shipment, so notify the shipper, unless the consignee has signified his acceptance of the property. Said notice may either be served personally or given by mail.

## "Rule XVI.

"When consignors ship goods consigned to order, but express in their bills of lading or shipping directions, the name of a person at destination to notify, it shall be the duty of the railroad or other transportation company to give legal notice to such party in the same way and under the same rule, as if the shipment had been made direct to him. But when the consignors do not comply with this condition, the railroad or other transportation company shall give such notice only to such consignors; except, that in shipments of grain or hay notice shall also be given to the local exchanges; provided, that at the expiration of free time the carrier shall give notice thereof to the consignor.

## "Rule XVII.

"Railroads shall not discriminate between persons or places in storage, or demurrage charges. No rebate, drawback or other similar device will be allowed; provided, that this rule shall not apply to package freight received in less than carload lots and unloaded in depots and warehouses.

## "Rule XVIII.

"No demurrage shall be charged on private cars, standing on private tracks, when both cars and tracks are owned by the same person. Where the cars are not owned by the owner of

the tracks no demurrage shall be charged; provided, the person owning the tracks shall furnish to the delivering railway satisfactory evidence that the owner of the cars releases both him and the delivering road from the payment of demurrage.

## "Rule XIX.

"Nothing in the foregoing rules shall be construed to prohibit railroad companies from contracting with shippers and consignees on terms of mutual convenience in the matter of furnishing and discharging cars; provided, that such contracts shall be so drawn as to give to either party the right to cancel same on ten days' notice, and thereafter demand the application of these rules.

## "Rule XX.

"The commission reserves the right, on its own motion, to suspend the operation of these rules, or any one or more of them, in whole or in part, whenever it shall appear that justice demands such action, and the commission will, upon complaint, hear and act upon applications for a like suspension.

"The commission further reserves all of its powers under the Constitution and laws of the State to impose fines and penalties upon transportation companies persistently disregarding these rules, or failing to furnish reasonable transportation facilities."

From the action of the Corporation Commission prescribing said rules the appellants took this appeal.

*Alexander Hamilton, Henry T. Wickham, J. Allen Watts, Joseph I. Doran, E. Randolph Williams, Leake* and *Carter, Thomas H. Wilcox, John G. Wilson* and *Alfred P. Thom,* for the appellants.

*Attorney-General William A. Anderson, A. C. Braxton* and *Jeffries & Lawless,* for the Commonwealth.

BUCHANAN, J. (after stating the case as above), delivered the opinion of the court.

The errors assigned upon this appeal are as follows:

First. That the commission did not sustain the objections made by each of the appellants at the hearing; that each of said rules, regulations and requirements applies to and attempts to regulate or control interstate commerce, and, in so far as it does so, is in excess of the powers of the commission.

Second. That the commission did not sustain the objection made by each of the appellants; that the said rules, regulations or requirements apply to any attempt to regulate or control foreign commerce, and, in so far as they do, are in excess of the powers of the commission.

Third. That the said commission did not sustain the objections made by each of the appellants to each of the rules numbered, respectively, 6, 8, 9, 10, 11, 12, 13, 14, 15 and 16; that said rules attempt to give to the patrons of each of the transportation companies the use of its property, without compensation, for the time indicated in said rules, respectively.

No objection is made here to the reasonableness or justness of the rules, but their validity is attacked upon the ground that each and all of them, so far as they apply to interstate and foreign commerce, are in violation of the commerce clause of the Constitution of the United States, and the acts of Congress passed pursuant thereto, and that certain of the rules make requirements which will deprive the appellants of the use of their property, without due process of law, and are, therefore, in violation of the fourteenth amendment of the Constitution of the United States.

The questions raised on this appeal, which have been discussed at length, and very ably, both in writing and in oral argument, are of great importance. They involve the right of the State, under its reserved power, whether that power be called police, governmental or legislative, to regulate the relative rights and duties of persons and corporations within its jurisdiction, so as to provide for the public good and the public convenience, by laws which are not inconsistent with the Constitution of the State, and which do not, by their operation, directly intrench upon the authority of the United States, or violate some right protected by the Federal Constitution. To draw the line between the two fields of jurisdiction, and to define and declare when a State regulation is an unconstitutional encroachment upon Federal power, is often a question very difficult to solve, even in a concrete case, but that difficulty is greatly increased and rendered well-nigh impossible when a court is called upon to pass upon a body of rules and regulations, like those now under consideration, and to declare whether or not they, or any of them, in their operation, will directly intrench upon the authority of the United States, or violate some right protected by the Federal Constitution.

The validity of the rules and regulations in question, so far as they apply to intrastate commerce, is not denied, except so far as they may, in their operation, deprive the appellants of the use of their property, without compensation, but it is insisted that they are wholly invalid, so far as they apply to interstate commerce and foreign commerce, upon the ground that that subject is wholly within the jurisdiction of the Federal government.

That this contention is not true, to the extent claimed, is well settled by numerous decisions of the Supreme Court of the United States.

In the case of *Lake Shore, &c. R. R. Co.* v. *Ohio, &c.,* 173

U. S. 285, 297, 19 Sup. Ct. 465, 470, 43 L. Ed. 702, Mr. Justice Harlan, speaking for the court, said that the cases of that court recognize "the fundamental principle that outside of the field directly occupied by the general government, under the powers granted to it by the Constitution, all questions arising within a State that relate to its internal order, or that involve the public convenience or the general good, are primarily for the determination of the State, and that its legislative enactments, relating to these subjects, and which are not inconsistent with the State Constitution, are to be respected and enforced in the courts of the Union, if they do not, by their operation, directly intrench upon the authority of the United States, or violate some right protected by the National Constitution. The power here referred to is, to use the words of Chief Justice Shaw, the power to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the Commonwealth and of the subjects of the same." *Commonwealth* v. *Alger,* 7 Cush. 53, 85.

"Mr. Cooley well said: 'It cannot be doubted that there is ample power in the legislative department of the State to adopt all necessary legislation for the purpose of enforcing the obligations of railway companies, as carriers of persons and goods, to accommodate the public impartially, and to make any reasonable provision for carrying with safety and expedition.' Cooley's Const. Law (6th Ed.), p. 715."

"It may be that such legislation is not within the 'police power' of a State, as those words have been sometimes, although inaccurately, used. But, in our opinion, the power, whether called police, governmental or legislative, exists in each State, by appropriate enactments, not forbidden by its own Constitution, or by the Constitution of the United States, to regulate

the relative rights and duties of all persons and corporations within its jurisdiction, and, therefore, to provide for the public convenience and the public good. This power in the State is entirely distinct from any power granted to the general government, although when exercised it may sometimes reach the subjects over which national legislation can be constitutionally extended."

In the case of *Cleveland, &c. Ry. Co. v. Illinois,* 177 U. S. 514, 516, 20 Sup. Ct. 722, 44 L. Ed. 868, it was said that "few classes of cases have become more common of recent years than those wherein the police power of the State over the vehicles of interstate commerce have been drawn in question. That such power exists, and will be enforced, notwithstanding the constitutional authority of Congress to regulate such commerce, is evident from the large number of cases in which we have sustained the validity of local laws, designed to secure the safety and comfort of passengers, employees, persons crossing railway tracks, and adjacent property owners, as well as other regulations intended for the public good.

"We have recently applied this doctrine to State laws, requiring locomotive engineers to be examined and licensed by the State authority (*Smith v. Alabama,* 124 U. S. 465, 31 L. Ed. 508, 8 Sup. Ct. Rep. 564), requiring such engineers to be examined, from time to time, with respect to their ability to distinguish colors (*Nashville, C. & St. L. R. Co. v. Alabama,* 128 U. S. 96, 32 L. Ed. 352, 2 Inters. Com. Rep. 238, 9 Sup. Ct. Rep. 28), requiring telegraph companies to receive dispatches, and to transmit and deliver them with due diligence, as applied to messages from outside the State (*Western Union Telegraph Co. v. James,* 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. Rep. 934), forbidding the running of freight trains on Sunday (*Hennington v. Georgia,* 163 U. S. 209, 41 L. Ed. 166, 16 Sup. Ct. Rep. 1086), requiring railway companies to

fix their rates annually for the transportation of passengers and freight, and also requiring them to post a printed copy of such rates at all their stations (*Chicago & N. W. R. Co.* v. *Fuller,* 17 Wall. 560, 21 L. Ed. 710), forbidding the consolidation of parallel or competing lines of railway (*Louisville & N. R. Co.* v. *Kentucky,* 161 U. S. 677, 40 L. Ed. 849, 16 Sup. Ct. Rep. 714), regulating the heating of passengers cars, and directing guards and guard-posts to be placed on railroad bridges and trestles and the approaches thereto (*New York, N. H. & H. R. Co.* v. *New York,* 165 U. S. 628, 41 L. Ed. 853, 17 Sup. Ct. Rep. 418), providing that no contract shall exempt any railroad corporation from the liability of a common carrier or a carrier of passengers, which would have existed if no contract had been made (*Chicago, M. & St. P. R. Co.* v. *Solen,* 169 U. S. 133, 42 L. Ed. 688, 18 Sup. Ct. Rep. 289), and declaring that when a common carrier accepts for transportation anything directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless at the time of such acceptance such carrier be released or exempted from such liability by contract, in writing, signed by the owner or his agent. *Richmond & A. R. Co.* v. *R. A. Patterson Tobacco Co.,* 169 U. S. 311, 42 L. Ed. 759, 18 Sup. Ct. Rep. 335. In none of these cases was it thought that the regulations were unreasonable, or operated in any just sense as a restriction upon interstate commerce."

And in one of the most recent decisions of that court (*Penn. R. R. Co.* v. *Hughes,* decided December last, No. 4 Advance Sheets of the Opinions of the Supreme Court, p. 132), it was held that the refusal of a State court to limit the liability of a common carrier for its negligence in the execution of a contract for interstate carriage to the valuation agreed upon, does not contravene the various provisions of the interstate commerce act

enacted by Congress, making it obligatory upon carriers to provide proper facilities for interstate carriage of freight, and preventing them from obstructing continuing shipments on interstate lines. In delivering the opinion of the court in that case, Mr. Justice Day said: "It is well settled that the State may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an effect upon interstate traffic."

It is impossible for us on this appeal to make a wholesale exposition of the constitutionality of the rules and regulations in question, so far as they may, in their varied application and enforcement, affect the rights of persons and corporations engaged in interstate and foreign shipments and transportation, or violate rights protected by the Federal Constitution. To hold that they are invalid, so far as they apply to interstate and foreign commerce, as the appellants insist should be done, might have the effect of depriving the State of her undoubted right, under her reserved powers, to make provisions for the purpose of enforcing the obligations of transportation companies to accommodate the public, and for regulating the relative rights and duties of all persons and corporations within its jurisdiction, and, therefore, to provide for the public convenience and the public good, when such regulations are in aid of, or only incidentally affect, interstate commerce, and do not violate any right protected by the Constitution of the United States.

To hold, on the other hand, that the rules would not, in their operation, directly intrench upon the authority of the United States, nor violate any right protected by the Federal Constitution, might result in our denying transportation companies and others their just rights under the Constitution and laws of the United States, and drive them to the Federal courts for the assertion and maintenance of rights which ought to be

guarded and enforced by the courts of the State, whose government they support, and from which they are entitled to protection. For these and other reasons, which might be given, we are of opinion that we ought not, upon this appeal, to attempt to decide to what extent, if at all, the said rules and regulations, in their operation, may directly infringe upon the commerce clause of the Constitution of the United States, or violate any right of the appellants under that instrument, and that the decision of those questions can only be properly made as they arise in concrete cases, and upon the particular facts of each case.

It is insisted by the appellants' counsel that if no relief is given them upon this appeal, as to the validity of the rules in question, their validity is, by the express terms of the Constitution, made conclusive, and cannot be questioned in an action or suit based upon the rules, and that no other provision is made by the Constitution by which their validity can be questioned, except in *quasi* criminal proceedings, which the commission is authorized to institute against them for the alleged violation of said rules and regulations. The provision of the Constitution relied on to sustain this contention is subsection "*h*" of section 156, and is as follows:

"The right of any person to institute and prosecute in the ordinary courts of justice any action, suit or motion against any transportation or transmission company, for any claim or cause of action against such company, shall not be extinguished or impaired by reason of any fine or other penalty which the commission may impose, or be authorized to impose, upon such company, because of its breach of any public duty, or because of its failure to comply with any order or requirement of the commission; but in no such proceeding by any person against such corporation, nor in any collateral proceeding, shall the reasonableness, justness or validity of any rate, charge, classifica-

tion of traffic, rule, regulation or requirement theretofore prescribed by the commission, within the scope of its authority, and then in force, be questioned; provided, however, that no case based upon or involving any order of the commission shall be heard or disposed of against the objection of either party, so long as such order is suspended in its operation by an order of the Supreme Court of Appeals, as authorized by this Constitution, or by any law passed in pursuance thereof."

The subsection quoted does not prevent the validity of any rule or regulation prescribed by the commission from being inquired into upon the trial of a cause of the kind mentioned in said subsection, if such rule or regulation, in its application to the facts of the case, violate any right of the defendant protected by the Constitution of the United States, for such rule or regulation is, to that extent, not within the scope of the authority of the commission, but in excess of its powers, and invalid, not only because it is in violation of the Constitution of the United States, but also because in conflict with section 153, Article XII, of the Constitution of the State, the article creating the Corporation Commission, and defining its powers and duties, which expressly declares that "the provisions of this article shall always be so restricted in their application as not to conflict with any of the provisions of the Constitution of the United States, and as if the necessary limitations upon their interpretation had been herein expressed in each case."

There being no objection made here to the reasonableness or justness of the rules and regulations in question, and their validity being attacked only to the extent of their application to interstate and foreign commerce, and in so far as they may deprive the appellants of the use of their property, without due process of law, we are, therefore, of opinion that the said rules and regulations are reasonable, just and valid, except in so far as they may, in their operation, directly intrench upon the com-

merce clause of the Constitution of the United States, or violate
some right of the appellants protected by that instrument; and
we are further of opinion that the question of their validity, so
far as affected by the Constitution of the United States, may be
raised and determined in any case in which that question could
be raised and determined, if the rules and regulations in ques-
tion had been enacted as statutes by the General Assembly,
except as prohibited by subsection *"d"* of section 156 of the
Constitution.

*Affirmed.*