DETROIT & M. R. CO. v. MICHIGAN RAILROAD COMMISSION et al.

(District Court, E. D. Michigan, S. D. March 22, 1913.)

No. 5,533.

1. CARRIERS (§ 12*)—REGULATION—RAILROAD COMMISSION ACT—RATES—"REA-SONABLE."

The Michigan Railroad Commission Act (Pub. Acts 1909, No. 300) authorizes the Commission to fix and determine reasonable rates. Section 26 (a) provides that any common carrier or person in interest, who is dissatisfied, within 30 days from the issuance of the order, may sue in the circuit court in chancery against the Commission to vacate the rates as unlawful or unreasonable, and section 26 (e) declares that in all such actions the burden of proof shall be on complainant to show that the order complained of is unlawful or unreasonable, as the case may be. *Held*, that the word "reasonable," as used in section 26, means nonconfiscatory; that from a judicial standpoint a rate is unreasonable only when it yields less than that minimum return which invested capital has a right to demand, that increment which is so inherently incidental to the investment that destroying the increment is a confiscation of the property; while from the legislative standpoint a rate may be reasonable which is not unfair to the shipper and at the same time is large enough to meet the demands of the legislative policy in encouraging railroad investments, contemplating a return much beyond the legal rate of interest on the money invested.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 7, p. 5953.]

2. JUDGMENT (§ 828*)—RES JUDICATA—JUDGMENT SUSTAINING RAILROAD RATES—RAILROAD COMMISSION.

The Michigan Railroad Commission Act (Pub. Acts 1909, No. 300) authorizes the Railroad Commission to fix. rates, and provides by section 26 (a) that any carrier or person dissatisfied with a rate fixed may sue the Commission in a circuit court to set aside the rates as unlawful or unreasonable, that the evidence taken in such action shall be transmitted to the Commission for its consideration, and, if the original order be not rescinded or changed, judgment shall be rendered thereon; section 26 (e) places the burden of proof on the complainant to show that the Commission's order is unlawful or unreasonable, as the case may be; and section 26 (d) authorizes an appeal to the Supreme Court. *Held* that, under Const. Mich. art. 4, §§ 1, 2, dividing the powers of government into legislative, executive, and judicial departments, and providing against infringement, the authority of the court in a suit to vacate a rate order of the Railroad Commission did not involve legislative action and was essentially judicial; and hence, where a judgment confirming a Commission's order had been affirmed on appeal to the Supreme Court, and a writ of error from the Supreme Court of the United States had been denied, the rate was res judicata, precluding a further contest thereof in the federal courts.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*]

In Equity. Suit by the Detroit & Mackinac· Railroad Company against the Michigan Railroad Commission and others. On motion for preliminary injunction. Denied.

James McNamara and Fred A. Baker, both of Detroit, Mich., for complainant.

Assistant Attorney General McGill and Gillett & Clark, of Bay City, Mich., for defendants.

Before KNAPPEN and DENISON, Circuit Judges, and TUTTLE, District Judge.

PER CURIAM. Complainant owns and operates a railroad running both north and south from Alpena. All questions here involved are with regard to traffic moving wholly within the state. The railroad company, pursuant to the Michigan statute and the regulations of the Michigan Railroad Commission, made and published a local tariff, known as "M. R. C. [Michigan Railroad Commission] 205," giving rates upon logs from specified stations to Alpena. It later so made and published a mileage tariff, known as "M. R. C. 208," giving mileage rates on logs, applicable "only when the manufactured product is to be reshipped via the Detroit & Mackinac Railway, and in the absence of tariffs naming specific rates." If the mileage basis, specified in tariff M. R. C. 208, was applied to the local rates fixed by tariff M. R. C. 205, they would be greatly reduced. Certain shippers complained to the Commission that the rates in 205 were unreasonable, and that this tariff, in connection with 208, operated as a discrimination against them, and favored other shippers, who were so situated as to take advantage of 208. Due notice was given, other shippers intervened on both sides of the controversy, proofs were taken, and a hearing had before the Commission. It found that the complaint was well based, and that the rates in tariff 205 were unjust, unreasonable, and excessive; and it ordered that the railway company should make and publish a new local tariff with specified lower rates. This required new tariff was made up mainly, if not wholly, by applying the mileage rate fixed in tariff 208. The Commission also made a further order, which need not be described, because fully within the rule which we are to consider.

The Michigan Railroad Commission Act (No. 300, Pub. Acts Mich. 1909), which undertakes, quoting from its title, to "define and regulate common carriers and the receiving, transportation and delivery of persons and property, prevent imposition, unreasonable rates, prevent unjust discrimination, insure adequate service, create the Michigan Railroad Commission," etc., contains a variety of provisions, of which those thought to be here important are quoted in the margin.[1]

[1] Sec. 26. (a) Any common carrier or other party in interest, being dissatisfied with any order of the Commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within thirty days from the issuance of such order and notice thereof commence an action in the circuit court in chancery against the Commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable, in which suit the Commission shall be served with a subpoena and a copy of the complaint. The Commission shall file its answer, and on leave of court any interested party may file an answer to said complaint. Upon the filing of the answer of the

Thereupon the railway company filed, in the circuit court for the county of Wayne, in chancery, its bill of complaint, reciting the facts above stated, and alleging the cost of its road, cost of operation, and value of the products shipped; that the local tariff under attack was, in all respects, just and fair; that the special mileage tariff (M. R. C. 208) was justified by special conditions stated; and that the two tariffs did not operate to cause any improper discrimination. It also alleges that the orders in question were against the just rights of com-

Commission said action shall be at issue and stand ready for hearing upon ten days' notice by either party. All suits brought under this section shall have precedence over any civil cause of a different nature pending in such court, and the circuit court shall always be deemed open for the hearing thereof, and the same shall proceed, be tried and determined as other chancery suits. Any party to such suit may introduce original evidence in addition to the transcript of evidence offered to said commission, and the circuit courts in chancery are hereby given jurisdiction of such suits and empowered to affirm, vacate or set aside the order of the Commission in whole or in part, and to make such other order or decree as the courts shall decide to be in accordance with the facts and the law.

(b) No injunction shall issue suspending or staying any order of the Commission, except upon application to the circuit court in chancery or to the judge thereof, notice to the Commission having been given and hearing having been had thereon.

(c) If, upon the trial of said action, evidence shall be introduced by the complainant which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto, the court, before proceeding to render judgment, unless the parties in such action stipulate in writing to the contrary, shall transmit a copy of such evidence to the Commission, and shall stay further proceedings in said action for fifteen days from the date of such transmission. Upon receipt of such evidence the Commission shall consider the same, and may alter, modify, amend or rescind its order relating to such rate or rates, fares, charges, classifications, joint rate or rates, regulations, practice or service complained of in said action, and shall report its action thereon to said court within ten days from the receipt of such evidence. If the Commission shall rescind its order complained of, the action shall be dismissed; if it shall alter, modify or amend the same, such altered, modified or amended order shall take the place of the original order complained of, and judgment shall be rendered thereon as though made by the Commission in the first instance. If the original order shall not be rescinded or changed by the Commission, judgment shall be rendered upon such original order.

(d) Either party to said action, within sixty days after service of a copy of the order or judgment of the court, may appeal to the Supreme Court, which appeal shall be governed by the statutes governing chancery appeals. When the appeal is taken the case shall, on the return of the papers to the Supreme Court, be immediately placed on the calendar of the then pending term, and shall be brought to a hearing in the same manner as other cases on the calendar, or if no term is then pending, shall take precedence of cases of a different nature except criminal cases at the next term of the Supreme Court.

(e) In all actions under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the Commission complained of is unlawful or unreasonable, as the case may be.

Sec. 27. (a) In all actions and proceedings in court arising under this act all such process shall be served and the practice and rules of evidence shall be the same as in actions in equity, except as otherwise herein provided. Every sheriff or other officer empowered to execute civil process shall execute any process issued under the provisions of this act, and shall receive such compensation therefor as may be prescribed by law for similar services.

plainant, and were unjust, unreasonable, and illegal, and if put into execution will financially cripple the complainant and interfere with the just and legal operation of its railroad; that no effort was made by the Commission to ascertain the cost of the carriage involved; that portions of the hauls covered by the order are upon logging branches, which are not railroads within the jurisdiction of the Commission; that the rates in M. R. C. 205 do not exceed the actual cost of carriage with a reasonable profit added; that complainant cannot be required to perform such services for less than cost and a reasonable profit; and that the orders of the Commission operate to compel service for less than such cost and a fair profit, and are in conflict with the due process of law clause of the fourteenth amendment to the federal Constitution. It further shows that, if the orders are enforced, its earning capacity will be reduced below the minimum rate of return on its investment, and its capital will be impaired, and its property will be taken, and again invokes the protection of the fourteenth amendment. It thereupon prays (1) that the logging spurs and branches be declared not subject to regulation by the Commission; (2) that the tariff rates of M. R. C. 205 may be decreed to be reasonable and just, and those fixed by the Commission to be unreasonable and unjust; (3) that the rates fixed by the Commission may be decreed to be confiscatory, and a deprivation of property without due process of law; (4) that the rates fixed by the Commission may be declared to be in conflict with the Michigan Constitution; and prays for general relief.

The Commission and intervening shippers answered, a large amount of evidence was taken, and the circuit judge certified the evidence to the Commission. It made a report to the court, adhering to its former opinion, and stating the reasons therefor. The circuit judge filed an elaborate opinion, pursuant to which the bill was dismissed. The complainant appealed to the Supreme Court of Michigan, the case was there heard like any other appeal in chancery, and the decree of the Wayne circuit court was affirmed. Detroit & Mackinac Railroad Co. v. Michigan Railroad Commission, 137 N. W. 329, decided July 22, 1912.

Complainant's application for the allowance of an appeal or writ of error to the Supreme Court of the United States was denied by Mr. Justice Day. His order of denial did not state the reasons therefor. Thereupon complainant filed its bill in this court. This bill is essentially similar to that filed in the Wayne circuit court, recounts the same proceedings, sets up substantially the same grounds of right, and prays for substantially the same relief.

Upon the argument of the motion for preliminary injunction, many different questions were presented; but we find it necessary to consider only one, and that is whether or not the matter is rès judicata by reason of the action of the Michigan state courts. On the one hand, it is urged that complainant and the intervening shippers who approved its action have been fully heard in a court of competent jurisdiction, and have been defeated by the final decree of the court of last resort; on the other hand, it is said that the proceedings in the

Michigan courts were various steps to the final fixing of the rate, and that there has not, as yet, been any judicial decision. Complainant's counsel, in maintaining this proposition, relies essentially upon the decision of the United States Supreme Court in Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150, and it is only necessary to determine whether that case is applicable. It arose in Virginia, and it seems that, in that state, there is no constitutional separation of the legislative and judicial powers, but that the state Railway Commission possesses power of both characters. From its decision, which is thus both a legislative act and a judicial decree, an appeal is provided to the Supreme Court of Appeals of the state; here, also, this dual character of power continues.

In the opinion in the Prentis Case (211 U. S. 227, 29 Sup. Ct. 70, 53 L. Ed. 150), and after stating the conclusion—a conclusion vital to the result reached—that the order and decree of the Commission was so far legislative that it would not be res judicata, but would be open to attack in subsequent litigation, Mr. Justice Holmes stated the further conclusion, not so vital, but not irrelevant:

"And all that we have said would be equally true if an appeal had been taken to the Supreme Court of Appeals and it had confirmed the rate. Its action in doing so would not have been judicial, although the questions debated by it might have been the same that might come before it as a court, and would have been discussed and passed upon by it in the same way that it would deal with them if they arose afterwards in a case properly so called. We gather that these are the views of the Supreme Court of Appeals itself. Atlantic Coast Line Ry. Co. v. Commonwealth, 102 Va. 599, 621 [46 S. E. 911]. They are implied in many cases in this and other United States courts in which the enforcement of rates has been enjoined, notwithstanding notice and hearing, and what counsel in this case call litigation in advance. Legislation cannot bolster itself up in that way. Litigation cannot arise until the moment of legislation has past."

It is quite obvious that what is here said about the decision of the Supreme Court of Appeals, and the argument for its application to the instant case, depend utterly upon the idea that the action of the Supreme Court of Appeals, in an appeal from the Railway Commission, was so far legislative, rather than judicial, in character, that it must be subject to be treated as legislation is treated. Is this, then, true of the review provided for by the Michigan statute?

We pass by the natural query whether the whole matter is not determined, without analysis of the statute, but necessarily by the constitutional policy of Michigan, whereby judicial power cannot be vested in anything but the courts, or legislative power be vested in either of the other governmental branches. The 1909 Constitution of Michigan (article 4, §§ 1 and 2) provides that the powers of government are divided into three departments, the legislative, executive, and judicial, and that no person belonging to one department shall exercise powers properly belonging to another, except in cases expressly provided in the Constitution. These provisions are the same as found in article 3 of the Constitution of 1850, and this rule of strict division and limitation has been often interpreted and applied by the Supreme Court of Michigan.

In Shumway v. Bennett, 29 Mich. 451, at page 464 (18 Am. Rep. 107), Judge Campbell said:

"The judicial power must be vested in courts. Such legislative power as can be delegated at all must be delegated to municipal corporations or local boards or officers."

In Houseman v. Kent Circuit Judge, 58 Mich. 364, at page 367, 25 N. W. 369, at page 370, Judge Champlin said:

"The design of the Constitution is that each of the three branches of the government shall be kept, as far as practicable, separate, and that one of the departments shall not exercise the powers confided by that instrument to either of the others. Any legislation, therefore, authorizing an invasion of this design, and conferring upon the judiciary the exercise of powers belonging to either of the others, cannot be regarded as valid."

In Telephone Co. v. St. Joseph, 121 Mich. 502, 80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520, it was expressly held that the establishing of reasonable rules and regulations for a public service corporation is a legislative or administrative function, and not a judicial one. See, also, Locke v. Speed, 62 Mich. 408, 28 N. W. 917, and Manistee v. Harley, 79 Mich. 238, 44 N. W. 603.

In the face of this clear rule that a Michigan court cannot constitutionally perform the function of which we are speaking, complainant apparently must finally come to the position that the intent of the act was to confer on the courts of Michigan a legislative as well as a judicial power of review, and that, since such intention must fail, the entire review is nugatory; but, however that may be, we must at least assume that the constitutional situation raises a presumption of nonintent to confer on the courts any power of legislation.

Let, us, then, examine the act, and see whether such intent is disclosed sufficiently to overcome the adverse presumption. We see no occasion to review the details as stated in the margin. In most respects, the provisions are appropriate, and appropriate only, for a judicial proceeding. In four respects only are there provisions not thus exclusively appropriate to the theory of judicial action. These are: (1) The provision in section 26 (a) that the action to be commenced by the carrier against the Commission to vacate its order may be "on the ground that" the rate fixed is "unlawful or unreasonable," or that some provision of the order is "unreasonable"; (2) the provision in section 26 (a) that the court may not only vacate the order in whole or in part, but may "make such other order or decree as the courts shall decide to be in accordance with the facts and the law"; (3) the requirement found in section 26 (c) that the additional evidence taken before the court shall be certified to the Commission, which may set aside, modify, or affirm its former order, and which must report its action to the court, which then proceeds to act with reference to the new or modified order; and (4) the implication arising from section 26 (e) that the controlling issue is whether the order of the Commission was "unlawful or unreasonable." The condition called the third in this enumeration is thought to tie the court and the Commission together, so as to indicate the single quality of the final decision; the first and fourth are said to indicate that the court has to decide exactly the question passed upon by the Commission, viz., what is "rea-

sonable"; and the second is said to imply the right of the court to fix for itself a reasonable rate, or such rate as it may decide to be "in accordance with the facts and the law."

[1] If the provisions which require the court to say what is "reasonable" stood alone, unaffected by the context or the presumptions arising from the constitutional distribution of powers, it would not be easy to determine their meaning; but, with the help of these aids to interpretation, it is clear that the word "reasonable" is here used as meaning "nonconfiscatory." As was pointed out in Louisville & Nashville Railroad Co. v. Siler (C. C.) 186 Fed. 176, at page 189, the problem whether a rate or a return is reasonable is a problem with a double aspect, legislative and judicial. From the legislative standpoint, that rate or return is reasonable which is not unfair to the shipper and at the same time is large enough to meet the demands of legislative policy in promoting and encouraging railroad investments. The Legislature, or the legislating administrative board, takes into account the risk involved, the community service rendered, past or prospective unprofitable periods, and all other elements tending to determine what a wise policy may be, and it may well fix a rate contemplating a return much beyond the legal rate of interest upon the money invested; in other words, from this point of view, a very liberal return may be "reasonable." On the other hand, it cannot be *judicially* said that a rate is unreasonable unless it yields less than that *minimum* return which the invested capital has a right to demand; in other words, that increment which is so inherently incidental to the investment that destroying the increment is a confiscation of the property. Only then, from the standpoint of a court, does a rate become "unreasonable"; and, finding this word "unreasonable" used in this statute with reference to the action of courts, which can have no other viewpoint, the word must receive this construction.

[2] The suggestion that the court has power to fix the rate, in addition to its power to vacate the action of the Commission, would also be plausible, if we observe only the single clause giving it power to "make such other order or decree," etc.; but this suggestion, likewise, must yield to the interpretation made necessary by the constitutional limitation. Again we may refer to the opinion in the Siler Case, and particularly to pages 183–189, for a review of the cases leading to the inevitable conclusion that the rate-fixing power is legislative, and is not judicial; and with equal certainty it follows that the rate-fixing function cannot be vested in or performed by a body which, like a Michigan court, cannot exercise executive or legislative power.

With these premises, it is plain that such tying together of the court and of the Commission as is accomplished by section 26.(c) is intended only to aid the court in its actions as a court, and not to transform the court into something else. The practice prescribed is one of convenience, entirely suitable to the elastic powers of a court of equity, and well adapted to reach a just and final disposition of the whole matter without delays and repeated trials.

We do not overlook some expressions in the opinion of the Supreme Court of Michigan, in this controversy, which may be thought inconsistent with our conclusion. That court says:

"We apprehend that the words 'reasonable and just,' in the statute, do not mean 'nonconfiscatory,' as the word 'confiscatory' is usually defined."

The court is here speaking, we think, of the Commission, and of the powers and duties of that body, and of the words "reasonable and just," as used in the statute with reference to the Commission. The court did not expressly consider the force of the words "reasonable" or "unreasonable," as used in the statute with reference to the courts, nor whether these words might, in that connection, have a different force.

The court also said:

"The duty of the courts in the premises is not essentially different from that of the Commission."

It is clear that this expression was not intended in its broadest sense, because, although the court indicated that the Commission was not confined to the question whether a rate was confiscatory, the court proceeded to discuss and dispose of the case on the theory that the courts were confined to that question. The sum of the whole matter was that the bill was dismissed because the complainant did not, with sufficient certainty and clearness, prove the existence of that confiscation, the presence of which was necessary to enable courts to give relief. We are satisfied that the opinion, upon the whole, confirms our view that the Michigan courts could consider only this question, and had no legislative or administrative discretion in determining what was reasonable, and that, therefore, when complainant resorted to the Michigan courts, it invoked the protection of the judicial power.

It follows that the right of the railway company to such a review as any court could give became fixed when the order of the Commission was promulgated; that, to prevent an invasion of its legal right, the railway company could resort to any court of competent jurisdiction; and that, having selected the Wayne circuit court in chancery, and having submitted its controversy to that court, and judgment having been rendered against complainant by that court and by the Supreme Court of Michigan, the railway company cannot now try the same controversy over again in this court.

The motion for injunction must be denied.