$$\frac{101}{107} \quad \frac{619}{784}$$

## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

### SOUTHERN EXPRESS CO. v. GOLDBERG.

### June 18, 1903.

1. INTERSTATE COMMERCE—*Silence of Congress—Power of States.*—The power of Congress over all subjects of commerce which are national in their character, admitting of only one system or plan of regulation, is supreme and conclusive, and its failure to act is an emphatic assertion that the subject shall be left free from restrictions, exactions, or burdens.

2. INTERSTATE COMMERCE—*Transportation of Goods to or from Points Outside the State.*—The transportation of goods by a railway or express company from a point in one State to a point in another State is interstate commerce, and cannot be regulated by a State statute.

3. INTERSTATE COMMERCE—*U. S. Constitution—Code, Section 1215.*—Section 1215 of the Code in so far as it undertakes to fix and prescribe the rate of charges to be received by express companies engaged in interstate commerce is in conflict with Article I., section 8, clause 3, of the Constitution of the United States, and is therefore void.

Error to a judgment of the Hustings Court of the city of Radford, rendered February 14, 1903, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*J. R. Johnson,* for the plaintiff in error.

*Longley & Jordan,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The Es Camillo Cigar Factory placed in the office of Adams

Express Company, in the city of Philadelphia, Pa., a package
of cigars, weighing sixteen pounds, to be shipped to Max Gold-
berg, at East Radford, Va. Upon this package the charges de-
manded by the company, amounting to 60 cents, were prepaid
by the cigar factory. The Southern Express Company having
traffic arrangements with Adams Express Company received
the package at Hagerstown, Md., for transportation to its des-
tination. When the shipment reached the office of the plaintiff
in error at East Radford, that company demanded 80 cents as
the terms upon which it would be delivered to the consignee.
This latter charge was paid under protest by the defendant in
error.

It appears that the correct charge, according to the rates of
the express company, for transporting the package from Phila-
delphia to East Radford, was 80 cents, and that the error of
charging only 60 cents, and failing to mark the package "Pre-
paid," occurred in the office of the company at Philadelphia;
the waybill calling for the collection of 80 cents at East Rad-
ford. The plaintiff in error failing to refund the excessive
charge within ten days after demand was made therefor, this
action was brought, in the name of the Commonwealth, at the
relation of the defendant in error, to recover of the plaintiff in
error the penalty prescribed by statute in such cases.

Section 1215 of the Code of 1887 provides that express com-
panies may charge $1.50 for every dollar charged by the rail-
road company, whose lines it may be using, for transporting
like articles by the regular freight trains of such railroad com-
panies, except that for carrying packages weighing less than
five pounds the rate of compensation shall not exceed 25 cents
for any distance within the State, and for packages weighing
more than five and less than fifty pounds the rate of compensa-
tion shall not exceed 50 cents for all distances within the State.

Section 1219 provides that whenever an express company
shall receive any article at a place without the State to be trans-

ported to a place within the State, or shall receive such article at a place within the State to be carried beyond its limits, the amount of compensation demanded by such company shall be regarded as a uniform rate of charge per pound, and per package per mile for and throughout the whole distance within and without the limits of the State, for which such article was so transported, unless it should otherwise appear by sufficient evidence.

Section 1220, as amended by an Act of the General Assembly approved December 20, 1897 (Acts 1897-'98, p. 12, c. 14), provides that for any violation of these sections such company shall forfeit not less than $100—one-half for the use of the informer, and the other half for the use of the Commonwealth—provided, however, that if the company shall within ten days after demand, at the place where paid, return the excess over the proper charge to the party paying the same, then the penalty or forfeiture provided for shall not be enforced.

The contention on behalf of the Southern Express Company is that section 1215 is in conflict with Article 1, cl. 3, of section 8 of the Constitution of the United States, which provides that Congress shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

It has long been established by the Supreme Court of the United States, to whose decisions we must look in determining questions of this character, that as to all subjects of commerce which are national in their character, admitting of only one uniform system or plan of regulation, the power of Congress to regulate commerce among the States is not only supreme, but exclusive, and that its failure to act is not to be interpreted as licensing the States to act. The silence of Congress is held to be an emphatic assertion that the subject shall be left free from any restrictions, exactions or burdens. *Gibbons* v. *Ogden,* 9 Wheat. 1, 6 L. Ed. 23; *The State Freight Tax Case,* 15

Wall. 232, 21 L. Ed. 146; *Hall* v. *De Cuir*, 95 U. S. 485, 24 L. Ed. 547; *Mobile* v. *Kimball*, 102 U. S. 691; 26 L. Ed. 238; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; *Wabash & P. Ry. Co.* v. *Illinois*, 118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200; *Leisy & Co.* v. *Hardin*, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128.

The State has the power to protect her own citizens from extortionate rates charged by one of her own corporations, so long as the commerce is carried on entirely within her own territorial limits. It is also an established principle that commerce between the States can be legitimately affected by State laws in that large class of cases involving the police power of the State, such as laws for the security of the lives, limbs, health, and comfort of persons, and the protection of property, or when it does those things which may otherwise incidentally affect commerce, such as the establishment and regulation of highways, canals, railroads, wharves, ferries, pilotage, and other commercial facilities. For authorities on this branch of the subject, it is only necessary to refer to those already cited.

It cannot be successfully questioned that the transportation of goods over the railroads by an express company from Philadelphia, in the State of Pennsylvania, to East Radford, in the State of Virginia, is interstate commerce.

In *Welton* v. *Missouri*, 91 U. S. 275, 23 L. Ed. 347, it is said: "It will not be denied that that portion of commerce with foreign countries and between the States which consists in the transportation and exchange of commodities is of national importance, and admits and requires uniformity of regulation. The very object of investing this power in the general government was to insure uniformity against discriminating State legislation."

And in *Gloucester Ferry Co.* v. *Pennsylvania, supra,* it is said that "it needs no argument to show that commerce between the States, which consists in the transportation of persons and property between them, is a subject of national character, and requires uniformity of regulation."

In the case of *Wabash & P. Ry. Co.* v. *Illinois,* 118 U. S. 557, 7 Sup. Ct., 30 L. Ed. already cited, the Supreme Court had under review an act of the Illinois Legislature which provided that if any railroad corporation shall charge, collect, or receive for the transportation of any passenger or freight of any description upon its railroad, for any distance within the State, the same or a greater amount of toll or compensation than is at the· same time charged, collected, or received for the transportation in the same direction of any passenger or like quantity of freight of the same class over a greater distance of the same road, all such discriminating charges, collections, or receipts, whether made directly or by means of rebate, or other shift or evasion, shall be deemed and taken against any such railroad corporation as *prima facie* evidence of unjust discrimination, prohibited by the provisions of the act. The statute further provided a penalty of not less than $5,000 for the offence, and also that the party aggrieved shall have a right to recover three times the amount of damages sustained, with costs and attorney's fees. The allegation was that the railroad company had, in violation of this statute, been guilty of an unjust discrimination in its rates of charges of compensation for the transportation of certain freight from Peoria, in the State of Illinois, to New York city. Mr. Justice Miller delivered an able opinion in the case, reviewing the authorities, and holding that the act was in violation of the commerce clause of the Constitution and invalid. In discussing the subject, the learned justice said that, "whatever may be the instrumentalities by which the transportation from one State to another may be effected, it is but one voyage—as much so as

that of the steamboat on the Mississippi river. It is not the railroads themselves that are regulated by this act of the Illinois Legislature, so much as the charge for transportation; and, in the language just cited (*Hall* v. *De Cuir, supra*), if each one of the States through whose territories these goods are transported can fix its own rules for prices, for modes of transit, for times and modes of delivery, and all other incidents of transportation to which the word 'regulation' can be applied, it is readily seen that the embarrassments upon interstate transportation, as an element of interstate commerce, might be too oppressive to be submitted to. It was . . . to meet just such a case that the commerce clause of the Constitution was adopted." It is further said that "it cannot be too strongly insisted upon that the right of continuous transportation from one end of the country to the other is essential, in modern times, to that freedom of commerce from the restraints which the States might choose to impose upon it, that the commerce clause was intended to secure. This clause giving to Congress the power to regulate commerce among the States and with foreign nations, as this court has said before, was among the most important of the subjects which prompted the formation of the Constitution. *Cook* v. *Pennsylvania,* 97 U. S. 574, 24 L. Ed. 1015; *Brown* v. *Maryland,* 12 Wheat, 446, 6 L. Ed. 678. And it would be a very feeble and almost useless provision, but poorly adapted to secure the entire freedom of commerce among the States which was deemed essential to a more perfect union by the framers of the Constitution, if, at every stage of the transportation of goods and chattels through the country, the State within whose limits a part of this transportation must be done could impose regulations concerning the price, compensation, or taxation or any other restrictive regulation interfering with and seriously embarrassing this commerce. . . . We must, therefore, hold that it is not, and never has been, the deliberate opinion of a majority of this court that

a statute of a State which attempts to regulate the fares and charges by railroad companies within its limits for a transportation which constitutes a part of commerce among the States is a valid law."

Counsel for the defendant in error make a calculation to show that the overcharge for that portion of the distance within the State of Virginia was $37\frac{1}{2}$ cents, and that it is only this overcharge within the State of Virginia, and the failure to refund that part of the overcharge, that is the issue in the case. In support of this proposition, *People* v. *Wabash, &c.,* 104 Ill. 476, is cited. This is the case which was reversed by the Supreme Court (118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244), and from which we have already quoted so fully. The Supreme Court of Illinois, conceding that the contract of shipment in that case was in itself a unit, and that the pay received by the railroad company was the compensation for the entire transportation from the point of departure in the State of Illinois to the city of New York, held that, while the statute of Illinois is inoperative upon that part of the contract which has reference to the transportation outside of the State, it is binding and effectual as to so much of the transportation as was within the limits of the State of Illinois. Mr. Justice Miller, in dealing with that question, says: "It becomes, therefore, necessary to inquire whether the charge exacted from the shippers in this case was a charge for interstate transportation, or was susceptible of a division which would allow so much of it to attach to commerce strictly within the State, and so much more to commerce in other States." It is then held, as already seen, that it was interstate commerce, and that the charge made for the whole distance could not, therefore, be apportioned in the manner suggested.

The case of *Stewart* v. *Coner* (Ga.), 28 S. E. 461, 62 Am. St. Rep. 353, relied on by defendant in error, could not be regarded as authority, even if it maintained a contrary view to

that taken by the Supreme Court of the United States. It is, however, easily distinguished from the case at bar. In the Georgia case the statute imposed a penalty upon any common carrier who should demand and receive for goods shipped from within or without the State a charge over and beyond the proper or contract rate of freight, whereas the Virginia statute under consideration undertakes to prescribe and determine the rates that the common carrier shall charge, and to impose a penalty for its violation.

Every statute is presumed to be constitutional, and the courts will not declare one to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the Legislature should be sustained. In the light of the authorities we have cited, it seems clear, and we are constrained to hold, that section 1215 of the Code of 1887, in so far as it undertakes to fix and prescribe the rate of charges to be received by common carriers engaged in interstate commerce, is in conflict with the commerce clause of the United States Constitution (Article 1, sec. 8, cl. 3), and, therefore, void; that the plaintiff in error, being a common carrier engaged as we have held, in commerce between the States, is not bound by the rates prescribed by section 1215 of the Code of 1887, and, therefore, not liable to the penalty imposed by section 1220 as amended.

For these reasons the judgment must be reversed and the verdict set aside, and this court will enter such judgment as the lower court ought to have entered, sustaining the demurrer to the declaration, and dismissing the same, with costs.

*Reversed.*