# CHARLESTON

JENNINGS *v.* BIG SANDY & CUMBERLAND RAILROAD COMPANY.

Submitted February 26, 1907.    Decided April 27, 1907.

1. COMMERCE—*Interstate Commerce—Railroads—Regulation of Rates.*

The provisions of section 2482, Code 1906, imposing a forfeiture upon any railroad corporation, agent or person which shall fix, demand or receive from any person any greater toll or compensation for the transportation, receipt, handling or delivery of goods or merchandise, or for weighing the same, than is provided by the provisions of that act, are void so far as it is attempted to apply them to interstate commerce. (p. 664.)

2. SAME—*Interstate Commerce—What Constitutes.*

A contract between a shipper and a railroad company, for the carriage of goods from a point within one state to a point in another state, is interstate commerce, and is not the subject of state regulation as to tolls or compensation therefor. (p. 668.)

Error to Circuit Court, Mingo County.

Action by Frank P. Jennings against the Big Sandy & Cumberland Railroad Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

C. H. JONES, for plaintiff in error.

J. J. DEVINE and SHEPPARD, GOODYKOONTZ & SCHERR, for defendant in error.

MILLER, JUDGE:

Section 2482, Code 1906, provides that "any railroad corporation, agent or person which shall fix, demand, take or

receive from any person or persons any greater toll or compensation for the transportation, receipt, handling or delivery of goods or merchandise, or for weighing the same, in violation of the provisions of this act shall forfeit and pay for any such offense any sum not exceeding one thousand dollars and costs of suit, including a reasonable attorney's fee, to be taxed by any court where the same is heard by appeal or otherwise, to be recovered in an action of debt by the party aggrieved in any court having jurisdiction thereof. And any officer, agent or employee of any such railroad corporation who shall knowingly and wilfully violate the provisions of this act, shall be liable to the penalties prescribed in this section." And section 2488 provides "that any incorporated company operating by steam or horse power a railroad not exceeding thirty miles in length, may charge for the transportation of freight not exceeding twenty cents per ton per mile."

The plaintiff, a liquor dealer at Devon, Mingo county, W. Va., sues the defendant to recover the sum of $1900, as the penalty prescribed by said section 2482 for alleged overcharges on two shipments of liquor from his place of business—the first on September 23, 1903, consigned to E. C. Yates at Blackey, Virginia; the second on March 25, 1904, consigned to John Ratliff at Hurley, Virginia; each weighing one hundred pounds.

The declaration alleges that the defendant owns, and operates by steam power, a railroad not exceeding thirty miles in Mingo county, extending from Devon into the state of Virginia for a distance not exceeding thirty miles, with depots or stations located at Blackey and Hurley in Virginia; that on the dates named the plaintiff made the shipments aforesaid, for the transportation of each of which the defendant knowingly and wilfully, in violation of law, demanded, took and received from the plaintiff one dollar; that the distance from Devon to Blackey was eighteen miles, and to Hurley fourteen; that the legal charges for the first shipment would have been eighteen cents, and for the second fourteen—an excess of eighty-two cents in the first instance and eighty-six in the latter.

The action is in debt, as prescribed by statute, but demands but $1900, whereas the full penalty prescribed by the stat-

ute for a violation thereof amounts to $2000; and the record does not disclose why the full penalty was not sued for. As there was a final judgment for the defendant upon demurrer (the plaintiff having declined to amend), to which judgment this writ of error is prosecuted, it is unnecessary to notice any preliminary question respecting defective service of process, or any other question presented by the record not involved in the final judgment.

It plainly appears from the allegations of the declaration that the transactions were interstate commerce, pure and simple; and that upon no principle can the regulative provisions of the West Virginia statute relied upon be applied to either of them. The plaintiff bases his case upon the police power of the state, and attempts to justify his suit by what are known as the Virginia Telegraph Cases—*Telegraph Co.* v. *Tyler*, 90 Va. 297; *Same* v. *Goddin*, 94 Va. 513; *Same* v. *Powell*, 94 Va. 268; *Shirlock* v. *Alling*, 93 U. S. 99—and upon the Georgia case of *Telegraph Co.* v. *James*, 162 U. S. 650.

The federal case from Georgia cited is of the same character as the Virginia cases; the statute in each case involved a provision requiring prompt delivery of messages by telegraph companies within the respective states, and did not undertake to impose any rules or regulations otherwise upon the transmission of messages from one state to another. Speaking of the Georgia statute, Justice Peckham says: "In one sense it affects the transmission of interstate messages, because such transmission is not completed until the message is delivered to the person to whom it is addressed, or reasonable diligence employed to deliver it. But the statute can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other states. It would not unfavorably affect or embarrass it in the course of its employment, and hence until Congress speaks upon the subject it would seem that such a statute must be valid. * * * The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. * * * Can

it be said that the imposition of a penalty for the violation of .a duty which the company owed by the general law of the land is a regulation of or an obstruction to interstate commerce within the meaning of that clause of the Federal Constitution under discussion? We think not. No tax is laid upon any interstate message, nor is there any regulation of a nature calculated to at all embarrass, obstruct or impede the company in the full and fair performance of its duty as an interstate sender of messages.

Moreover, from a later case it is evident that the Virginia Telegraph Cases were intended to have no such effect as is given them by counsel for the plaintiff in error; for in the later case of *Express Co. v. Goldberg* (1903), 44 S. E. 893, involving the shipment of goods from Philadelphia to Radford in Virginia, in which the charges were greater than the statute of Virginia permitted, it was held that that statute in so far as it undertook to fix rates and charges of a common carrier engaged in interstate commerce violated the Federal Constitution (Article 1, section 8, clause 3), which gives Congress power to regulate commerce among the several states. That case is directly in point here, is on all fours with this case, and moreover is in entire accord with the decisions of the Supreme Court of the United States binding upon us. States, in the exercise of police power, cannot for any purpose whatever encroach upon the power of the general government, or rights granted or secured by the supreme law of the land. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 661. And where such police powers are so exercised as to come within the domain of federal authority as defined by the Constitution, the latter must prevail. *Morgan* v. *Louisiana*, 118 U. S. 455, 464. No urgency for its use can authorize a state to exercise its police power in regard to a subject matter which has been confided exclusively to the discretion of Congress by the Constitution. *Henderson* v. *New York*, 92 U. S. 259, 272. When the subject upon which the power is to act is local in its operation, then the power of the state is so far concurrent that its action is permissible, until Congress interferes and takes control of the subject; but when the subject upon which Congress can act under this power is national in its character, and admits and requires uniformity of regulation affecting alike all the states,

then the power is in its nature exclusive. *Steamship Co.* v. *Railroad Commrs.*, 18 Fed. R. 10. A state cannot, under the guise of its police power, impose regulations upon such parts of interstate shipments as are performed within such state. *Wabash Ry.* v. *Illinois*, 118 U. S. 557, 558. It has been held that in so far as such regulations are of domestic concern, and only incidentally affect interstate commerce, until Congress prescribes the relations thereof to interstate commerce they are within the power of state supervision. *Chicago etc. Ry.* v. *Iowa*, 94 U. S. 155; *Peik* v. *Chicago & Northw. Ry.*, 94 U. S. 164, 177–8; *Carton* v. *Railroad Co.*, 59 Ia. 148. But, whatever may be the power of a state over commerce completely internal, it can no more prohibit or regulate that which is interstate than it can that which is with foreign nations. *Railroad Co.* v. *Ihusen*, 95 U. S. 465. A Texas statute making it unlawful for a railroad company of that state to charge and collect a greater sum for transporting freight than is specified in the bill of lading was held, when applied to interstate shipments, to be in conflict with section 6 of the Interstate Commerce Act of February 4, 1887. *Railway Co.* v. *Hefley*, 158 U. S. 98. In this case it was held that when a state statute and the federal statute operate upon the same subject matter, and prescribe different rules concerning it, and the federal statute is one within the competency of Congress to enact, the state statute must give way.

Counsel for the plaintiff also relies on the cases of *Railroad Co.* v. *Transportation Co.*, 25 W. Va. 325, and *Transportation Co.* v. *Sweetzer*, *Id.* 434. These cases both related to interstate commerce, involved transactions wholly within the state of West Virginia, and have not, and were never intended to have, any application whatsoever to interstate transactions. Even if otherwise, they would have to give way, certainly, since Congress has undertaken to act on the subject by the act known as the Interstate Commerce Act, passed February 4, 1887. This act prohibits unjust and unreasonable charges, undue and unreasonable preferences and unjust discriminations, and requires equal facilities for all. Section 8 of that act gives a right of action against the carrier for damages sustained by a shipper in consequence of

a violation thereof; and it has been held by federal authority that the courts of the United States have exclusive jurisdiction of causes of action arising under this act. *Van Potter* v. *Railway Co.*, 74 Fed. R. 91.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*