Statement.

# Richmond.

## Southern Railway Co. v. Commonwealth.

### January 23, 1908.

1. INTERSTATE COMMERCE—*Furnishing Empty Cars—Regulations.*—Furnishing empty cars for an interstate shipment is a necessary part of interstate commerce, and a statute which undertakes to regulate the time, manner and conditions under which such cars shall be furnished, is a regulation of an essential part of interstate commerce.

2. CONSTITUTIONAL LAW—*Test of Validity.*—The constitutional validity of a law is to be tested, not by what has been done under it, but by what may be done.

3. INTERSTATE COMMERCE—*Furnishing Empty Cars—Car Service—Rule I Unreasonable Burden.*—Rule I prescribed by the State Corporation Commission for the government of transportation companies and shippers doing business in this state, which requires such companies unconditionally to furnish empty cars to shippers within four days after application therefor and imposes a penalty for its violation, in so far as it applies to interstate shipments, imposes an unreasonable burden on interstate commerce, and is in conflict with the Act of Congress regulating interstate commerce. Where such burden is imposed it is immaterial what mode of procedure is adopted to enforce the rule, or what penalty is prescribed.

4. INTERSTATE COMMERCE—*Furnishing Cars—Reasonable Regulations by States.*—A state may, in the absence of action by Congress, prescribe rules and regulations for transportation companies and shippers in the matter of furnishing and loading cars for interstate shipments, provided such rules and regulations be reasonable and just, and do not in their application directly infringe upon the commerce clause of the constitution of the United States, or violate some right of such companies or shippers protected thereby. For divergence of opinion on this point, see separate opinions of judges.

Appeal from the State Corporation Commission.

*Reversed.*

The opinion states the case.

*Alfred P. Thom, Robert B. Tunstall* and *John K. Graves,* for the appellant.

*Attorney-General Wm. A. Anderson,* for the commonwealth.

Cardwell, J., (with whom Keith, P., concurs.)

The rules establishel by the State Corporation Commission for the regulation of transportation companies and shippers doing business in this state came under review in *Atlantic Coast Line Railway Co.* v. *Commonwealth,* 102 Va. 599, 46 S. E. 911, and it was held that, while said rules and regulations, as applied to transportation companies and shippers doing business in this state, are reasonable, just and valid, whether said rules and regulations do, in their operation, directly infringe upon the commerce clause of the constitution of the United States, or violate some right of such companies or shippers protected by that instrument, can be properly determined only as the questions arise in concrete cases, and upon the particular facts of each case, the court saying: "The State Corporation Commission has no authority to make any rule or regulation in conflict with the constitution of the United States, and if any such rule or regulation is made, which, in its application to the facts of a particular case, violates any right of a defendant protected by the constitution of the United States, he may have its validity tested by an appeal to this court, notwithstanding its refusal to pass on the abstract proposition presented on the present appeal."

A concrete case is presented on this appeal, and arises out of an alleged violation on the part of appellant of Rule I of the series of rules and regulations established by the State Corporation Commission for the government of transportation companies and shippers doing business in this state, which rule is as follows:

"When a shipper makes verbal or written application to a railroad company for a car or cars, to be loaded with any kind of freight embraced in the tariff of said company, stating in said application the character of the freight, and its final destination, the railroad company shall furnish same within four

days from seven o'clock A. M. the day following such application.

"Or, when the shipper making such application specifies· a future day on which he desires to make a shipment, giving not less than four days' notice thereof, computing from seven o'clock A. M. the day following such application, the railroad company shall furnish such car or cars on the day specified in the application.

"For failing to comply with this rule, the company so offending shall forfeit and pay to the shipper applying the sum of $1.00 per car per day, or fraction of a day's delay after expiration of free time, upon demand in writing, made within thirty days thereafter by the shipper;

"*Provided,* however, that this rule shall not apply to shipments of coal and coke from mines and ovens."

Appellant was cited to appear before the State Corporation Commission at its court room in the city of Richmond on the 2nd day of May, 1906, to show cause, if any it could, why a fine should not be imposed upon it for its violation of law and its public duty, in that it had failed and refused to furnish to one M. W. Cutshall, at Rapidan station, on the line of appellant's railway, in Virginia, certain cars alleged to have been properly ordered by Cutshall for loading, at Rapidan station, the number of cars ordered and the dates on which they were ordered in each instance being stated, and the period of appellant's delinquency in each case named; all of the nine delinquencies alleged, except one, consisting of a delay in furnishing cars for loading telegraph or telephone poles for shipment, either to Calverton station, Baltimore, Md., to Dover, Pa., Camden, N. J., or to North Philadelphia.

On the day named in the citation, appellant appeared and made answer thereto, making objection to the proposed imposition of a fine upon it mainly on the ground that the order of the commission to show cause why a penalty should not be

imposed upon it was based upon an alleged failure of appellant to furnish a car or cars for the loading of freight for interstate shipment, and that the rule of the commission alleged to have been violated is, as applied to an interstate shipment, or interstate shipments, *ultra vires,* void, and of no effect, because it amounts to a regulation of interstate commerce, or to an unreasonable burden thereon, in either of which cases it is an infringement upon the powers of congress under sub-section 3 of section 8 of article 1 of the constitution of the United States, which confers upon congress the exclusive power to regulate commerce with foreign nations and among the states, etc.

The Commission having considered the testimony adduced, and the objections made by the appellant to the right of the Commission to take action in the case, though finding difficulty, as its order states, in arriving at a satisfactory conclusion, overruled the objection made to Rule I *supra,* as applied to interstate shipments, held the rule valid, imposed upon appellant a fine of $50.00, and ordered that the fine, together with the costs of the proceeding be paid to the clerk of the Commission within thirty days from the entry of the order.

The assignments of error present for our determination the paramount question, whether or not the application of Rule I to the facts of this case brings it in conflict with the interstate commerce clause of the constitution of the United States, *supra,* and so renders the rule void and of no effect.

The subject of this litigation is of the greatest importance to the transportation companies of the state engaged in the transportation of freight, as well as to shippers of freight, and requires the careful consideration here, which the order appealed from indicates was given it by the State Corporation Commission, charged, as is the Commission, by the constitution and statutes of the state with the duty of fixing and prescribing storage, demurrage and car-service charges, which may be collected by railroad and other transportation companies on freight

transported or to be transported by them, and to be paid by them on freight delayed and cars not furnished or placed by them when required, with rules and regulations governing the same. *A. C. L. R. Co.* v. *Com'th, supra.*

That shipments of freight from this state into other states is interstate commerce, requires no argument or citation of authority, but the learned attorney-general contends that the furnishing of empty cars to shippers to be sent into other states is not interstate commerce, nor, indeed, commerce at all, for the reason that, "as a matter of fact, and in legal intendment also, 'commerce' does not begin certainly until the car has been loaded, probably not until its custody has been yielded by the shipper to the transportation company."

It would seem quite difficult, if not impossible, to maintain a distinction between interstate commerce as applied to the article to be transported and interstate commerce as applied to the instrumentalities by which such commerce is carried on, especially in view of the fact that it is not questioned that empty cars furnished shippers to be sent into other states are, after they are loaded and put into the custody of the carrier, instrumentalities of commerce, and, therefore, commerce itself, the exclusive control of which is in congress.

That cars engaged in interstate traffic, although unloaded and not in motion, are instrumentalities of commerce seems clearly settled in *Johnson* v. *So. Pac. Co.*, 196 U. S. 1, 49 L. Ed. 363, 25 Sup. Ct. 158, where the question arose, whether a dining car regularly engaged in interstate traffic ceased to be so when waiting for the train to make the next trip, and it was held that it did not; the opinion of the court, after reviewing the contentions of counsel and authorities cited, saying: "Confessedly this dining car was under the control of congress while in the act of making its interstate journey, and in our judgment it was equally so when waiting for a train to be made up for

the next trip. It was being regularly used in the movement of interstate traffic and so within the law."

Instrumentalities of commerce are, *ex necessitate,* a part of commerce, and if a car for an interstate shipment is to be regarded as a necessary instrumentality by which an interstate shipment is to be carried, and in fact a part of the interstate commercial duty of the carrier to furnish, then interstate commerce cannot be confined to the mere act of transit, since receiving, loading, unloading, switching ,and delivery are as essentially parts of interstate commerce as the act of transit. It would not be contended that a state could forbid any of these things, as a more effectual way of prohibiting interstate commerce could not be devised; and if, instead of undertaking to forbid the furnishing of cars for interstate shipments, or the loading, or switching, or delivery, the state should undertake to regulate all these things, clearly as it would seem upon reason and authority, that would be a regulation of an essential part of interstate commerce. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 214, 29 L. Ed. 158, 5 Sup. Ct. 826; *Stanley* v. *Wabash R. Co.,* 100 Mo. 435, 13 S. W. 709, 8 L. R. A. 549.

A later case more directly in point is *Houston & Texas Cent. R. Co.* v. *Mayes,* 201 U. S. 321, 50 L. Ed. 772, 26 Sup. Ct. 491, (spoken of hereafter in this opinion as the Texas case), in which a provision of the revised statutes of Texas of a similar character and import to Rule I, *supra,* was declared void when applied to interstate commerce, on the ground that it was in conflict with the commerce clause of the Federal constitution.

A comparison of Rule I in question with the Texas statute, condemned in the case just cited, discloses that the rule is more unreasonable and imposes even a greater burden on interstate commerce than the provisions of the Texas statute. While that statute limited the number of cars that might be required, allowed a longer time within which the carrier should furnish them, the time fixed being according to the number of cars ap-

plied for, the applicant to deposit with the agent of the carrier one-fourth of the amount of the freight charge for the use of the cars applied for, unless the carrier agreed to waive this requirement, and the provisions of the statute "not to apply in cases of strikes or other public calamity." Rule I, under consideration, is absolute in its requirements, making no exception for sudden congestions of traffic occasioned by wrecks or other causes mentioned by the court in the Texas case, which would excuse the carrier. No allowance is made, as in the Texas statute, for the failure to furnish cars within the required time occasioned by a strike or other public calamity, nor does it allow more free time for the furnishing of fifty cars than for one, and no deposit is required to insure the good faith of the shipper. The application may be verbal, or even by telephone, and the shipper not required to designate a point, such as a side-track where loading is practicable, and the number of cars he may order is not limited. Under the requirements of the rule, the equipment of the carrier from other states might have to be withdrawn to an extent necessarily and directly obstructing the movement of interstate commerce originating in such other states.

The rule is not rendered less absolute and inexorable, as contended on behalf of the commonwealth, by Rule XX of the series of rules established by our State Corporation Commission, whereby the Commission reserves the right at all times, and under all circumstances, "whenever justice demands such action, to suspend the operation of these rules, or any one or more of them, in whole or in part." Whether or not the Commission would have had the right to exercise their discretion in the enforcement of the rule in such cases as this, had not Rule XX. been embraced in the series of rules, need not be here determined. The constitutional validity of a law is to be tested, not by what has been done under it, but by what may be done. *Stuart* v. *Palmer,* 74 N. Y. 191, 30 Am. Rep. 289; *Violette* v.

*Alexandria,* 92 Va. 561, 23 S. E. 909, 53 Am. St. Rep, 825, 31 L. R. A. 382.

In the Texas case the syllabi are as follows:

"An absolute requirement that a railroad engaged in interstate commerce shall furnish a certain number of cars on a specified day to transport merchandise to another state, regardless of every other consideration, except strikes and other public calamities, transcends the police power of the states and amounts to a burden upon interstate commerce; and articles 4497-5000 Rev. Stat. Texas, being such a requirement, are, when applied to interstate commerce shipments, void as a violation of the commerce clause of the Federal constitution.

"Such a regulation cannot be sustained as to interstate commerce shipments as an exercise of the police power of the state."

In the argument of counsel it is said: "The intention of the constitution was to confer the power to regulate interstate commerce exclusively upon congress, and not to divide the power between the state legislature and congress. One of the chief objects of the constitution was to rid commerce of the conflicting vexatious and burdensome restrictions, which, under the articles of confederation, had been imposed by the various states."

In a more recent case (*McNeill* v. *Southern Ry. Co.,* 202 U. S. 543, 50 L. Ed. 1142, 26 Sup. Ct. 722,) the question involved was, whether or not an order of the North Carolina Corporation Commission, requiring the defendant railway company, upon payment of freight charges, to make delivery beyond its right of way and on a private siding of the Greensboro Coal & Ice Co. of certain cars consigned to the latter company at Greensboro, N. C., from points without the state of North Carolina, was repugnant to the commerce clause of the Federal constitution; and by a unanimous court, the order was held to be invalid, the ruling being rested on the same grounds upon which the appellant here relies as invalidating Rule I of our State Corporation Commission, viz: that the order imposed a

burden on interstate commerce, and that it conflicted with those provisions of the act to regulate commerce which prohibit unjust discrimination. Among the authorities cited in that case is the Texas case, *supra.*

It is further contended in the argument of the learned attorney-general, that the Texas case is to be distinguished from the case at bar, on the ground that the Texas case was a suit by a shipper to redress a private wrong, and the Texas statute prescribed a penalty of $25 for each day's delay in furnishing empty cars after the expiration of free time, and in addition thereto the shipper was entitled to recover the actual damages he sustained; while the penalty prescribed by Rule I, *supra,* is only $1 for each day's delay after the expiration of free time. Nothing, however, appears in the decided cases referred to indicating that the effect of the rule upon the conduct of the carrier in conducting its interstate business is to be measured or determined by either the mode of procedure or the amount of the penalty prescribed for a violation of the statute or rule. True, a penalty may be so great as to invalidate a statute which otherwise would be valid; but, so far as this case is concerned, the amount of the penalty is a minor consideration, and nothing appears to show that it was not so regarded in the Texas case. It is also true that in the Texas case the statute under review, which is similar, in so far as it is an attempt to regulate interstate commerce, to Rule I *supra,* was held invalid on the declared ground that exceptions were not made for cases which might occur, rendering the carrier unable to furnish cars within the time specified; but a careful examination of the printed record in that case fails to disclose any evidence of a wash-out or sudden congestion of traffic, or unavailable detention of cars in other states or in other places in the same state, or any other circumstances which the court declared should excuse the railroad company from furnishing cars applied for. In other words, the court took judicial notice of the fact that such condi-

tions might arise, and for that reason the statute was "likely" to do great injustice to the roads, and, therefore, declared that the statute was an unreasonable burden upon interstate commerce, and invalid so far as interstate shipments were concerned, reversing the judgment of the Texas court, that the railroad company should pay the penalties demanded by Mayes as well as actual damages.

In the case before us, circumstances of which the court took judicial notice in the Texas case, as likely to arise, and which should excuse the carrier, are affirmatively established by appellant's uncontroverted testimony. This testimony shows that appellant operates a continuous line of railroad through Virginia, North and South Carolina, Georgia, Alabama, Mississippi, Tennessee, Florida, Kentucky, Indiana and Illinois, and that it operates its freight trains no farther north than Alexandria, Va.; so that a large part of its interstate traffic originating in Virginia, destined to northern points, moves only a short distance over its rails, being delivered at Alexandria to its connections for transportation to destination; that at the time the cars were demanded by Cutshall there was an "unprecedented movement of lumber in open cars;" that Cutshall's freight consisted of telegraph or telephone poles, which required a special class of equipment with special appliances, viz.: flat cars of the same height, fastened together with chains; that the demand was "tremendously active," and that a "very serious shortage in flat cars" had resulted; that the appellant did not have the cars and could not get them, although it used every effort to do so; that the appellant had ordered a large number of cars which it was unable to secure, owing to the fact that the carbuilders were far behind in filling their orders. It is made further to appear, that if the cars required by Cutshall had been furnished in the time prescribed by Rule I, *supra,* if they could have been furnished at all, they would have had to be taken from other parts of appellant's line of railway, where

engaged in interstate or intrastate traffic, and handled empty to Rapidan station, and in all probability a great distance, whereby appellant might have been subjected not only to like penalties to those prescribed by the rule for failure to furnish empty cars, and imposed in this case, but even larger penalties for violation of a statute or rule of another state from which the cars would have had to be withdrawn. It is thus made to appear that the penalty imposed was for a failure to do the impossible or to obey a rule which, when applied to the facts and circumstances made to appear by the proof in the proceeding, imposes not only a direct but an unreasonable burden upon the movement of interstate shipments.

It is not controverted that the authorities maintain the right of a state, in the absence of action by congress, to pass laws or to confer upon an administrative agency the power to make reasonable regulations, which, though incidentally affecting commerce are not intended to prescribe rules for the conduct of that commerce, but are passed or established in the exercise of the police power (called the reserved power) of a state, to promote the welfare and convenience of its citizens, subject always to the condition that such legislation be not inconsistent with the national constitution, nor in derogation of any right granted or secured by it.

Many instances of statutes which have been held within the competency of the state, though affecting interstate commerce indirectly, are mentioned in the opinion by Buchanan, J., in *A. C. L. R. Co.* v. *Commonwealth, supra,* but none of the statutes referred to undertake to control the conduct of the carrier with respect to interstate commerce in a case similar to the one we are considering.

Calvert, in his very recent treatise on the Regulation of Commerce, at page 93, *et seq.,* after declaring that while the power of the state to adopt police regulations which may incidentally burden commerce is admitted, the power is occa-

sionally so exercised as to be an aid to, rather than a burden on, commerce, and that there are many occasions where the police power of the state can be properly exercised to insure a faithful and prompt performance of duty within the limits of the state upon the part of those who are engaged in interstate commerce, and especially is this so with respect to regulations having in view the convenience of the public, as in enforcing track connections between two railroads, and rules for the safety of persons and property, which are to be regarded as legislation in aid of commerce, and are considered with special favor by the courts, further says: "But when a state statute has been enacted which may be said to have relation to the public morals, the public health, the public safety or the public convenience, the subject of which is not within the exclusive power of congress, or which in its operation does not conflict with an act of congress, the last and supreme test is that of reasonableness. * * * A statute passed in pursuance of any of the purposes for which this power may be exercised must have a real or substantial relation to the object for which it was enacted, and if it unreasonably or unnecessarily hampers commerce between the states, or fails to make allowance for the practical difficulties in the administration of the law, it cannot be approved." Citing among others the Texas case, *supra.*

In *Western Union Tel. Co.* v. *James,* 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. 934, the statute of Georgia required, under a penalty, prompt delivery and transmission of interstate messages; yet the Supreme Court of the United States declared it valid, on the ground that it did not require of the telegraph company any duties in addition to those imposed upon such companies by the common law, and, therefore, the statute was not a regulation of interstate commerce, because it did not prescribe a rule by which the telegraph company's conduct with respect to interstate messages was to be governed, but

simply imposed a penalty upon the company for failure to perform its common law duty. In the opinion stress is laid upon the fact that the statute contained no regulation of a nature calculated at all to embarrass, obstruct or impede the company in the full and fair performance of its duty as an interstate sender of messages.

To the same effect is the opinion of this court in *Postal Tel. Co.* v. *Umstadter,* 103 Va. 742, 50 S. E. 259, where the imposition of the penalty prescribed by section 1291 of the code for a failure to transmit from Norfolk, Va., a message to be delivered in Baltimore, Md., was upheld on the ground that the statute, as applied to the facts of the case, was not a violation of the commerce clause of the constitution of the United States. In the opinion it is said: "It is settled law that a telegraph line is an instrument of commerce, and that telegraph companies are subject to the regulating power of Congress in respect to their foreign and interstate business."

The reasoning upon which the authorities agree that a state statute, in so far as it imposes a penalty for failure to deliver a message, where the delivery is to be made in another state, infringes upon the exclusive power of congress to control commerce is, that conflict and confusion would follow the attempted exercise by several states of such a power. The same reasoning applies with equal, if not with greater force to the case before us. In the proof it appears that other states through which appellant's railway is operated have a similar statute or rule of regulation to Rule I, *supra,* intended to control transportation companies with respect to their duty in furnishing cars for interstate as well as intrastate shipments of freight, the duty imposed and the penalty for a violation of the prescribed duty being different and in one or more of these states much greater than that provided for in Rule I.

When unprecedented conditions arise, as they will in the future as in the past, whereby appellant cannot possibly fur-

nish cars to meet the demands of the shippers in each of these states, will it not be natural—in fact a necessity—for it to withdraw the cars in use or needed in this state and send them for the use of shippers in another state, where for a failure to furnish cars the penalty to be suffered is much larger than that incurred by a failure to furnish required cars in this state, whereby conflict and confusion in the conduct of appellant's interstate traffic would not only be brought about, but a direct and unreasonable burden imposed upon interstate commerce? Clearly such a condition of things is not only possible but "likely" to happen, as said in the Texas case. Would not the application of a statute or rule to such a state of facts and circumstances as appear in this record necessarily, directly and unreasonably operate as a hinderance to and interference with interstate commerce? This question has been fully answered in the affirmative, by the decisions of the Supreme Court of the United States, to which we have adverted, and "to which we must look in determining questions of this character." *Southern Ex. Co.* v. *Goldberg,* 101 Va. 619, 44 S. E. 893, 62 L. R. A. 669.

There is nothing, in the opinion of the court, in the Texas case, *supra,* which denies the right of a state to prescribe a reasonable rule or regulation of transportation companies and shippers in the matter of furnishing and loading cars for interstate as well as intrastate shipments of freight, provided the rule or regulation be reasonable and just, and does not in its application directly infringe upon the commerce clause of the constitution of the United States, or violate some right of such companies or shippers protected by that instrument; but the Texas statute is declared invalid upon the ground that it was unreasonable, in that exceptions were not made for cases which might occur rendering the carrier unable to furnish cars within the time specified, thereby imposing an unreasonable burden

upon interstate commerce. The opinion in that case concludes as follows:

"While railroad companies may be bound to furnish sufficient cars for their usual and ordinary traffic, cases will inevitably arise where, by reason of an unexpected turn in the market, a great public gathering, or an unforeseen rush of travel, a pressure upon the road for transportation facilities may arise, which good management and a desire to fulfill all its legal requirements cannot provide for, and against which the statute in question makes no allowance.

"Although it may be admitted that the statute is not far from the line of proper police regulation, we think that sufficient allowance is not made for the practical difficulties in the administration of the law, and that, as applied to interstate commerce, it transcends the legitimate powers of the legislature."

Whether or not congress has exercised its jurisdiction in the the matter of furnishing cars to shippers to be sent to destinations without the state, in the act known as the "act to regulate commerce," as suggested in the argument, whereby the several states of the Union are precluded from prescribing any rule or regulation relating to the subject, is a question we could not consider upon this record. *Texas & Pac. Ry. Co.* v. *Abilene C. O. Co.,* 204 U. S. 426, 51 L. Ed. 553, 27 Sup. Ct. 350.

We are of opinion, for the reasons stated, that Rule I of the series of car service and demurrage rules, established by the State Corporation Commission for the government of transportation companies and shippers doing business in this state, here in question, as applied to this case, is invalid and void, because in conflict with the commerce clause of the constitution of the United States. Therefore, the judgment of the Commission appealed from will be reversed and annulled, and this proceeding dismissed.

Whittle, J.:

I concur in the opinion of Judge Cardwell in this case,

namely, that Rule I, in question, is not a reasonable exercise of the police power of the state with respect to furnishing cars for interstate shipments, but I desire to emphasize the fact that I am of opinion that it is within the competency of the State Corporation Commission, in the absence of legislation by congress, or action by the Interstate Commerce Commission, to establish and enforce reasonable rules and regulations requiring railroad companies, on application of intending shippers, to supply adequate car service, whether the freight be intended for intrastate or interstate shipment; and that, in the present state of the decisions of the Supreme Court of the United States on the subject of interstate shipments (the controlling influence of which is conceded), the crucial test of the validity of such rule is its reasonableness.

BUCHANAN AND HARRISON, J. J.:

We concur in the conclusion reached by the other members of the court, that Rule I of the State Corporation Commission is invalid, but do not concur in the reasoning by which they reach that conclusion. Their reasoning; if followed to its logical result as we understand it, would not only render the rule in question invalid, but would make it impossible for the State Corporation Commission to make any valid rule on the subject.

We base our conclusion in the case upon the principles announced and the reasons given in the opinion of the Supreme Court of the United States in the case of *Houston &c. R. Co.* v. *Mayes,* 201 U. S. 321, 50 L. Ed. 772, 26 Sup. Ct. 491, which clearly recognizes, as we understand it, the right of the state, under its police or reserved powers, to make reasonable regulations as to the furnishing of cars by railroad companies, not only for intrastate, but also for interstate shipments.

*Reversed.*